IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ROBERT NOLAN DAWES, <br><br> Defendant. | CR 20-107-BLG-SPW <br><br> ORDER |

Before the Court is Defendant Robert Dawes' Motion to Suppress statements made during an interview with BIA Special Agent Lenora Nioce and FBI Special Agent Steve Lowe on July 6, 2017. (Doc. 27) Dawes argues that his statements should be suppressed under Federal Rule of Criminal Procedure 12(b)(3), the 4th Amendment, and the 5th Amendment because he provided incriminating statements without the benefit of a *Miranda*[1] warning during what he claims was a custodial interrogation. (Doc. 28 at 2). The Court held a hearing on June 4, 2021, and Agent Lowe was the only testifying witness. After considering the parties' arguments, the testimony presented at the hearing, and the recording of the interview, the Court denies the motion for the reasons described below.

---

[1] *Miranda v. Arizona*, 386 U.S. 436 (1966).

1

## I. Background

In the course of an assault investigation, Agents Nioce and Lowe came to suspect Dawes was the perpetrator and sought to interview him about his connection to the assault and to the victim. The agents learned that Dawes was possibly staying with his mother and on July 6, 2017, the agents traveled to her house in Crow Agency, Montana, to speak to Dawes.

Upon arriving at the house, the agents parked the car, an unmarked Chevy Tahoe, on the street in front of the house and proceeded to the front door. Agent Lowe could not recall the exact wording of the conversation, but testified that Dawes eventually came to the door. The agents identified themselves and told Dawes that they wished to speak to him and asked if he would be comfortable talking in the car so the parties could speak freely. Dawes agreed and the three walked to the car, approximately 20 steps away, with Dawes leading and the agents following behind. Dawes got into the front passenger seat, Agent Nioce got into the driver's seat, and Agent Lowe sat in the back middle.

Agent Lowe testified that he often uses vehicles as a semi-private location to speak to individuals without the opportunity to be overheard. He further stated that neither agent was in uniform and, to his recollection, neither weapon was visible. He stated the agents viewed Dawes as the likely suspect and wanted to get his story

on the record. Agent Lowe stated that he took care to avoid any show of force or coercion during the interaction.

Once inside the vehicle, the agents began recording the conversation. For approximately the first eight minutes, Agent Nioce asked Dawes questions and conducted the interview. At that time, Agent Lowe interjected and told Dawes that he was not under arrest and was free to terminate the interview at any time. Agent Lowe testified that he provided the warning as a "precaution" to ensure that Dawes knew the conversation was non-custodial. There was no warning or advisement prior to that point. Before the warning, the questions were open-ended, and the tone was polite. Agent Lowe then continued the interview and the conversation became increasingly confrontational until Dawes terminated the interview and left the car. In total, the recorded portion of the interview lasted just over 40 minutes.

## II. Dawes' Motion to Suppress

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). For *Miranda* to apply, a person must have been both in custody and subjected to interrogation. *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006).

"Custody" is a term of art that specifies circumstances considered to present a serious danger of coercion. *Howes v. Fields*, 565 U.S. 499, 509 (2012). A court determines whether a reasonable person in those circumstances would have felt that he was not at liberty to terminate the interrogation and leave. *Id.* This determination considers the objective circumstances; the focus is not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994). The Court examines the totality of the circumstances to determine whether a person was in custody for purposes of *Miranda*. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

The following factors are among those most relevant when determining whether a reasonable person would believe he could terminate the interrogation and leave:

    (1) the language used to summon the individual;

    (2) the extent to which the defendant is confronted with evidence of guilt;

    (3) the physical surroundings of the interrogation;

    (4) the duration of the detention; and

    (5) the degree of pressure applied to detain the individual.

*United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002). This list of factors is not exhaustive. The United States Supreme Court explained that the location of the questioning, its duration, statements made during the interview, the presence or

absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning are other relevant factors that a court might consider in determining whether an interviewee was in custody. *Howes*, 565 U.S. at 509.

### a. Language used to summon the defendant

The first *Kim* factor considers the "language used to summon the individual." 292 F.3d at 974. In determining whether a suspect is "in custody" for *Miranda* purposes, the Supreme Court has considered whether the suspect voluntarily approached or accompanied law officers understanding that questioning would ensue. *Id.* (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1982)). Willingly agreeing to submit to an encounter with the police typically suggests an individual is not in custody. *Id.*

Here, Agent Lowe testified that he and Agent Nioce knocked on Dawes' mother's door and she answered. When Dawes came to the door, the agents told Dawes they would like to speak with him. Dawes agreed. The interview took place in the car right outside the house, which was a location familiar to Dawes. Neither agent handcuffed Dawes nor commanded him to speak with them. Neither agent brandished a weapon nor threatened Dawes in any way. Dawes sat in the passenger seat closest to the house, unobstructed and with the door unlocked. The Court finds that Dawes made the choice to accompany the agents to the car to

answer questions. This factor weighs in the United States' favor. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (a suspect who speaks with the police voluntarily, even at the invitation of the police, is not "in custody.").

### b. Confrontation with evidence of guilt

The second *Kim* factor considers "the extent to which the defendant is confronted with evidence of guilt." 292 F.3d at 974. This factor is not implicated here. Agent Lowe did not confront Dawes with any evidence of guilt during the first 8 minutes of the interview—and arguably not at all. Later in the interview, Agent Lowe tells Dawes that he believed Dawes was being untruthful, but that is not a confrontation with evidence of guilt. In fact, prior to Agent Lowe's reminder that he was not in custody and free to leave, Dawes gave his own side of the story, with little questioning from agents. Agent Lowe testified his objective with Dawes was merely to obtain information about Dawes' recollection of events. There is no evidence that Dawes was in custody based on confrontation with evidence of guilt.

### c. The physical surroundings of the interrogation

The third *Kim* factor considers "the physical surroundings of the interrogation." 292 F.3d at 974. The Ninth Circuit has held that an interrogation in a closed police vehicle may be considered custodial. *See United States v. Lee*, 699 F.2d 466, 468 (9th Cir. 1982). The United States asserts, however, that *Lee*

and *Kim* are distinguishable because Dawes was not locked in the vehicle nor prevented from leaving. (Doc. 33 at 8-9).

The fact that Dawes was interviewed in a law enforcement vehicle is not the sole consideration here. *Kim,* 292 F.3d at 980 ("Even when questioning occurs at a police station, there is not custody per se."). Additional factors must be considered. For example, the Ninth Circuit addressed a situation similar to Dawes' in *United States v. Hudgens*, 798 F.2d 1234, 1235 (9th Cir. 1986). There, FBI agents met the defendant at an agreed upon location. The agents asked Hudgens to get into a "police-looking type vehicle," to which Hudgens agreed. *Id.* While in the car, Hudgens told the agents he had robbed a bank. The agents asked Hudgens specific questions about the robbery and got him a cup of coffee. *Id.* The interview lasted 45 minutes and Hudgens was not advised of his *Miranda* rights. *Id.* The Ninth Circuit held that although Hudgens was in a police car and was not told he was free to leave, the interview was not coercive. *Id.* at 1237. The court explained that Hudgens was not a suspect prior to the time he initiated the conversation with agents, and prior to his confession, the agents had no idea which robbery he had committed. Further, the agents did not use intimidating or coercive language during the interview. *Id.*

Here, like Hudgens, Dawes voluntarily entered the front seat with Agent Nioce. His door was not blocked or locked. It was daylight out and the car was

parked on the street in front of his mother's house. Neither agent brandished a weapon nor locked the doors. *See id.* (Interviewing a defendant in familiar surroundings was much less coercive than an interrogation room).

Considering the totality of the physical circumstances, an objective view of the circumstances demonstrates a reasonable person would have felt free to terminate the questioning and leave. This factor favors the United States.

### d. Duration of the detention

The fourth *Kim* factor considers the "duration of the detention." 292 F.3d at 974. Nearly 9 minutes passed from when Dawes got in the car to the time Agent Lowe told Dawes he was free to end the conversation at any time. This, combined with the facts that the interview was conducted in an open, friendly tone, Dawes participated actively, and the conversation was plainly consensual, leads the Court to conclude this factor favors the United States. *See United States v. Bassignani*, 575 F.3d 879, 884 (9th Cir. 2009) (finding a two and a half hour interrogation non-custodial when the interview was conducted in a friendly open tone, the defendant actively participated and the conversation was plainly consensual); *see also Hudgens*, 798 F.2d at 1236–37 (holding that the lack of handcuffs and other physical restraints, together with the fact that the detention lasted only forty-five minutes supported a finding of no custody).

### e. Degree of pressure applied to detain individual

There is no evidence that Agent Lowe or Agent Nioce used physical or psychological pressure to keep Dawes in the car. Agent Lowe did not threaten or place Dawes in handcuffs, brandish his weapon, or restrain Dawes in any way. Dawes seemed comfortable; nothing about Dawes' behavior indicates to the Court that he felt pressured, physically or psychologically, to stay in the vehicle. Under the circumstances, a reasonable person would have believed that he could terminate the interview and leave. This factor favors the United States.

### III. Conclusion

Considering the above factors, and the totality of the circumstances, the Court finds that the July 6, 2017, conversation with Dawes was non-custodial and therefore a *Miranda* warning was not necessary. On that basis, Dawes' Motion to Suppress (Doc. 27) is DENIED.

DATED this 22 day of June 2021.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge